## WILLIAM NESBITT

### *v.*

## HARNESS TRUMBO *et al.*

1.  CONSTITUTIONAL LAW—*private ways.*   The act of 1861, authorizing a private way to be established over the land of a person against his objection, is in violation of the eighth section of article thirteen of the Constitution of this State, which declares that no person shall be " disseized of his freehold " or " deprived of his property," " but by the judgment of his peers or the law of the land."

2.  The legislature is powerless to afford the means by which a private way can be established over another's lands without his consent.   His right is supreme, except when such lands are needed for public use, and then he must be compensated before they can be taken.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. EDWARD Y. RICE, Judge, presiding.

This was an application by John Smith to the commissioners of highways of the town of Woodside. in Sangamon county,

for a private road, to be established from his farm over the land of William Nesbitt and others to a public road. The commissioners granted the application and laid out the road.

The matter came before the Circuit Court upon an agreed case, it being stipulated that the only question to be presented was, as to the constitutionality of the act authorizing the establishment of private ways over the land of others against their objections.

A motion to quash the proceedings of the commissioners was overruled, and thereupon Nesbitt sued out this writ of error.

Messrs. STUART, EDWARDS & BROWN, for the plaintiff in error.

I. There is nothing in the record to show that the private way sought to be established is one of necessity.

II. The doctrine of a "way of necessity" cannot apply to grants from the government under our peculiar land laws.

III. The statute is unconstitutional. *Dickey* v. *Tennison*, 27 Missouri, 373 ; *Sadler* v. *Langham*, 34 Ala. 311 ; *State* v. *Glen*, 7 Jones' Law (N. C.), 321 ; *Clack* v. *White*, 2 Swan (Tenn.), 540 ; *Cornelius* v. *Glen*, id. 512 ; *Hoye* v. *Swan*, 5 Md. 237 ; *The People* v. *White*, 11 Barb. 30, and authorities there cited. In the matter of *Albany street*, 11 Wend. 150, and also a number of other cases directly to the point on this question cited in 11 Barb. 31 and 32. *Taylor* v. *Porter*, 4 Hill (N. Y.), 140 ; 2 Kent (9th ed.), 418 ; *Embury* v. *Conner*, 3 Comst. 511 ; 3 Parsons on Contracts (5th ed.), p. 542 ; *West River Bridge Co.* v. *Dix*, 6 How. 543, 544, 546, per WOODBURY, J.

Mr. N. M. BROADWELL, for the defendants in error.

I. The common law right to a way, from necessity, prevails in this country, and the legislative enactment is to provide a convenient mode of fixing the locality of a way, the right to which is already in existence. But if it is not a previously existing right, there is nothing to prevent the legislature from giving the right. *Snyder* v. *Warford & Thompson*, 11 Mo. 513.

II. Right of way " of necessity," applies to government grants. Id. But, as by the agreement in this case, nothing but the constitutional question is submitted to the court, the attention of the court is called to that question, without stopping to argue the preceding points at length.

III. It is insisted by plaintiff in error, that the Illinois statute authorizing the proceedings in this case (see Acts of 1861, pp. 263 and 264), is in conflict with this provision of the Constitution: " Nor shall any man's property be taken for, or applied to, public use, without the consent of his representative in the general assembly, nor without just compensation being made to him." § 11, art. 13, Constitution. It will be seen from an examination of this constitutional provision, that it does not grant or deny a power. It is simply a recognition of the existence of a power antecedently enjoyed by the State; and the Constitution, without in any degree abridging this power, only prescribes that two conditions shall be observed before the exercise of the power in all its fullness, to-wit:

First, the consent of the owner of property, obtained through his representatives in the general assembly; and, second, making compensation to him.

What is the power obviously contemplated by this constitutional provision? Manifestly the right of eminent domain, " the highest and most exact idea of property remaining in the government, or in the aggregate body of the people in their sovereign capacity." *Beekman* v. *Saratoga & Schenectady R. R. Co.*, 3 Paige, 63.

It rests in the wisdom of the legislature to determine whether the benefit of the public will be of sufficient importance to render it expedient for them to exercise the right of eminent domain; and when the legislature determines the question, the courts have no power to review the legislative action, unless it is clearly and manifestly violative of individual right. Id. Angel on Highways, p. 61; 1 Black's Com. 139; *Boston Water Co.* v. *Boston & Worcester R. R. Co.*, 23 Pick. 360; *Hazen* v. *Essex Co.*, 12 Cush. 475; *Hickey* v. *Tennison*, 27 Mo. 373.

In this instance no such right is violated, for the reason that no property is taken, but simply an easement imposed upon it for public benefit.    *Snyder* v. *Warford & Thompson*, 11 Mo. 513.

But even if the absolute ownership of the property were taken, the act would not be unconstitutional, because it is a taking for public use.  *Harvey* v. *Thomas*, 10 Watts, 63 ; *Ferris et al.* v. *Bramble et al.*, 5 Ohio, 109 ; *Shaver* v. *Starrett*, 4 id. 494; *Hickman's case*, 4 Harrington (Del.) 580 ; *Pocopson road*, 4 Harris (Pa.) 15 ; *Snyder* v. *Worford & Thompson*, 11 Mo. 513.

Again, our statute (see Acts of '61, p. 264) provides that the private way opened under its provisions " shall not be converted to any other use or purpose than that of a road." In thus dropping the adjective "private," as a qualification of the word " road," it is manifest that the legislature intended to declare such private way a *road* open to the public.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court :

This record presents the question whether the act authorizing a private way, to be established over land of an owner against his objections, is constitutional.   The provision is found in the ninety-third section of the act of 1861 (Sess. Laws, 263). The provision of our Constitution supposed to be violated by this enactment is the eighth section of article thirteen, and is this : " No person shall be imprisoned, or disseized of his freehold, liberties or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."   Does the establishment of such a way over a man's land disseize him of " his freehold," or deprive him of " his property," as provided in this enactment, without the judgment of his peers, or contrary to the law of the land ?

This is not a question of first impression in the courts of this country, it having arisen and been judicially determined

in several of our sister States. In the case of *Hickey* v. *Tennison*, 27 Mo. 373, it was held that private property cannot be constitutionally condemned and appropriated by the legislature to private uses. And it was likewise held that an act authorizing the location of a neighborhood road, which was, in fact, but a private way, was unconstitutional, and the acts performed under it were void. The court say : " Our Constitution provides that no private property ought to be taken or applied to public use without just compensation. Whilst this provision recognized the right of eminent domain in the State for public use, there is nothing which sanctions the doctrine that the property of individuals may be taken for private use, with or without compensation; such a right would be hostile to the existence of private property. * * * Hence, commentators on our form of government, whilst they acknowledge the right of eminent domain in the State for the public use in its broadest terms, are unanimous in the opinion that private property cannot be taken for private use."

In the case of *Clack* v. *White*, 2 Swan's (Tenn.) 540, the court say : " Now, the statute confers power upon the County Court to grant a right of way against the will of the person who owns the land. It takes from him, *in invitum*, a part of his private estate, and gives it to another, as a private right, for such indemnity as a jury may assess. Now, we deny that any such power exists, under the Constitution of the State. The right to private property is under the protection of the Constitution, and is to be held as sacred and inviolable. The legislature has no power to take or invade it for any mere private purpose, or to transfer it from one person to another against the will of the owner, whether indemnity be provided for it or not. The will of the owner is, in this respect, stronger than the legislative power; and if he refuses to grant the private way, we are not aware of any power by which he may be enforced to grant it."

In the case of *Sadler* v. *Langham*, 34 Ala. 311, the court say, " the legislature cannot, either with or without compensation take private property for private use." And the court held that the establishment of a private way over the land of

another, under the statute prescribing the mode, conferred no rights, as the law was unconstitutional and void. And after the statute had been in force for upward of twenty-five years, in the case of *Hoye* v. *Swan*, Md. 237, the court lay down the rule that the State may take private property for public use, but is powerless to take one man's land and give it to another; that it cannot do so any more than a citizen can grant what he does not own.

In the case of the *Matter of Albany street in the city of New York*, 11 Wend. 150, the court held that the city could take no more of a lot than was necessary for a street. That an act authorizing them to condemn and appropriate the lot was unconstitutional and void, when such lands are taken without the consent of the owner. In the case of the *People* v. *White*, 11 Barb. 26, the court say, " the taking of private property, then, can only be justified, when it is taken for public use, and on payment of just compensation. It is only by virtue of this principle, and under this restriction, that land is taken for public roads, turnpikes, railways, etc. · All are placed on the same footing, and are subject to the same limitations. The right acquired is a mere easement, or servitude, as it is called in the civil law—a right to use—and when the use is abandoned the title reverts to the former owner. If the State may retain this land, compulsorily taken, after it has been abandoned for the purposes of a canal, it may sell it to some other citizen. This could not be justified under a permission to take private property for public use. It would be taking the property of one citizen and transferring it to another. In other words it would be taking private property for private or individual use; and it would be a plain violation of the constitutional provision in question, and a gross outrage upon the rights of the citizen."

It will be observed that this question was decided under the provision in the Constitution of New York which declares that private property shall not be taken for public use without just compensation. The court say that the provision was recognized in this country long before it was incorporated in their Constitution. The court say it was unwritten constitutional law.

This decision was preceded by the decision in the case of *Taylor* v. *Porter*, 4 Hill, 140, where Mr. Justice Bronson delivered the opinion of the court. It was there held that a statute authorizing a private road to be laid out over the lands of a person without his consent is unconstitutional and void.

The Supreme Court of Missouri (11 Mo. 513), held that the statute which authorizes the condemnation of a private right of way was not unconstitutional. The court say that this is not a right of property, but merely an easement, which does not conflict in the slightest degree with the proprietorship of the owner. And it was upon this distinction that the validity of the law was upheld. This case would seem to conflict with that of *Dickey* v. *Tennison.* But this latter case does not refer to the former, and it was probably not designed to overrule that case, as the court lay much stress upon the fact that the way was authorized by a special law, authorizing the person desiring the way to make out the report to the County Court, who were to appoint commissioners, who were to be paid by him, and were to pay all damages. But the court held that the fact that no notice of the assessment of damages was given rendered the whole proceeding void.

In the case of *McCauley* v. *Dunlap*, 4 B. Mon. 57, the court held that, to grant a private way without compensation for damages, was unconstitutional. But the court remanded the cause for further proceedings with directions for a further trial.

These, so far as we have had time for examination, are the cases in which the principle has been applied under constitutional provisions, if not similar, substantially the same as those contained in ours. And they seem to fully sustain the objection that the law is unconstitutional, and that the legislature is powerless to afford the means by which a person can procure the right of way over another person's lands without his consent. His right seems to be supreme, except where it is needed for public use, and then he must be compensated before it can be taken.

Nor can there be the slightest pretense in this case that this way was, in any just sense, for public use. It was alone for

individual or private use. From these decisions, the doctrine seems to be too well and firmly established, whatever may have been our preconceived opinions, to be now shaken. And, to hold that the legislature might exercise this power, would doubtless open the way to other and more serious encroachments upon the right of property, which was designed to be secured by this most salutary provision. In the light of these authorities, we feel compelled to hold this provision of the law unconstitutional. And the judgment of the court below must be reversed. LAWRENCE, J., *dissenting.*

*Judgment reversed.*