(No. 54510.—

THE CITY OF EAST PEORIA, Appellee, v. GROUP FIVE DEVELOPMENT CO. *et al.* (Community College District No. 514, Appellant).

*Opinion filed November 20, 1981.*

Harrod Law Firm, P.C., of Eureka (Samuel G. Harrod and Daniel M. Harrod, of counsel), for appellant.

Mishael O. Gard, and Frederick A. Johnson, of Swain, Johnson & Gard, of Peoria, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

The City of East Peoria (City) filed a petition to

construct a local improvement for road purposes across land partly owned by the appellant, Community College District No. 514 (District). The circuit court of Tazewell County dismissed the City's petition. The appellate court reversed and remanded (90 Ill. App. 3d 729), holding that sections 9—2—14 and 9—2—15 of the Illinois Municipal Code (Code) (Ill. Rev. Stat. 1977, ch. 24, pars. 9—2—14, 9—2—15) authorized the City to take public property for the purpose of a local improvement. We granted leave to appeal.

There is but one issue: May the City, under the Code, condemn property already devoted to a public use?

Pursuant to an ordinance adopted on January 2, 1979, the City sought to construct a new four-lane highway as a local improvement. Construction of the highway would be financed by a special assessment. The proposed improvement would extend over two miles of land, part of which was owned by the District, a body corporate and politic of the State of Illinois.

The City filed a petition in the circuit court requesting, *inter alia,* that the court ascertain the just compensation for property to be taken or damaged in connection with the local improvement. One of the party defendants was the District. Pursuant to the District's motion to dismiss, the court dismissed the City's petition on the ground that it lacked authority to condemn public property for local improvements. The city's subsequent motion to vacate this order was denied, and it appealed.

The appellate court held that the legislature could, and did, authorize the taking of public property by one governmental unit from another. It did so on the basis that in 1933, the legislature amended sections of "An Act concerning local improvements" (Act) to include the words "or public" property.

The District argues that property already devoted to a public use cannot be taken unless the legislature expressly,

or by necessary implication, indicates this intent.

The City contends that the legislature, by including the words "or public," expressed a clear intent to allow municipalities to condemn property devoted to public use. It asserts there is no other reasonable explanation for including the words "or public."

When originally adopted, the Act provided for the assessment of just compensation where a municipality condemned private property for the purpose of local improvements. The Act was interpreted as only granting authority for the taking of private property. (*City of Moline v. Greene* (1911), 252 Ill. 475, 479.) Subsequent cases adhered to this rule. (See, *e.g., City of Chicago v. Roth* (1929), 334 Ill. 132, 134.) Since the taking power under the Act was deemed general, public property could not be subject to condemnation. "The general rule is, that such [public] property cannot be taken and appropriated to another and different use unless the legislative intent to so take it has been manifested in express terms or by necessary implication." (*City of Moline v. Greene* (1911), 252 Ill. 475, 477; see *Department of Public Works & Buildings v. Ells* (1962), 23 Ill. 2d 619, 620.) Although the Act did not provide for the taking of public property, there was no question that the legislature had authority to allow municipalities to condemn property devoted to a public use. 252 Ill. 475, 477. See *City of Edwardsville v. County of Madison* (1911), 251 Ill. 265, 267.

In 1933, the legislature amended certain sections of the Act so as to insert the words "or public" to modify the word "property." The amended provisions, *inter alia,* were codified in the 1961 Code as sections 9—2—14 and 9—2—15. These sections provide, in relevant part:

"If the ordinance provides for improvements which require the taking or damaging of property, the proceeding for making just compensation therefor shall be as described in Sections 9—2—15 through

9—2—37. Such a proceeding also shall be governed by the remaining sections of this Division 2, so far as not in conflict with Sections 9—2—15 through 9—2—37." Ill. Rev. Stat. 1977, ch. 24, 9—2—14.

"Whenever any local improvement ordinance is passed by the corporate authorities of any municipality, to be paid for wholly or in part by special assessment, or by special taxation, the making of which will require that private *or public property* be taken or damaged for public use, the municipality, either in that ordinance or by subsequent order, shall designate some officer to file a petition in the circuit court of the county in which the municipality is situated * * *. Such petition shall be filed in the name of the municipality, praying that steps may be taken to ascertain the just compensation to be made for private *or public property* to be taken or damaged for the improvement or purpose specified in the ordinance, and to ascertain what property will be benefited by the improvement, and the amount of those benefits." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 24, par. 9—2—15.

It is well settled that, in construing a statute, the language should be given its plain and ordinary meaning. (*Franzese v. Trinko* (1977), 66 Ill. 2d 136, 139.) The intent of the legislature should be determined and given effect. (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.) In ascertaining legislative intent, courts may consider subsequent amendments to a statute. *People v. Bratcher* (1976), 63 Ill. 2d 534, 543.

In light of the amendments allowing just compensation for the taking of public property, it seems clear that the legislature intended to provide for the condemnation of property already devoted to a public use. Contrary to the District's assertion, it is unnecessary for the legislature to spell out each type of public property that may be subject to condemnation. It is reasonable to assume that the legisla-

ture intended to confer a broad power of eminent domain. This intent should not be defeated by labeling the power "general" instead of "specific." The legislature knew the court's interpretation of the Act prior to 1933. To overcome the interpretation and expand the powers of condemnation, it deliberately inserted the words "or public." Further, if the statute was applicable only to private property, the phrase "or public" would be meaningless. "[A] 'statute should be so construed, if possible, that no word, clause or sentence is rendered meaningless or superfluous.' " (*City of Mount Carmel v. Partee* (1979), 74 Ill. 2d 371, 376, quoting *People ex rel. Barrett v. Barrett* (1964), 31 Ill. 2d 360, 364-65.) We therefore conclude that sections 9—2—14 and 9—2—15 of the Code expand municipalities' power of condemnation to include public property.

The District contends that allowing one public body to condemn the property of another will lead to abuses of the power granted, for which the relevant Code sections provide no remedy. This argument is without merit. When a public body seeks to take property already devoted to a public use, courts are empowered to consider the reasonableness of the taking (see *City of Chicago v. Municipal Engineering & Contracting Co.* (1920), 292 Ill. 614, 618), and to correct any clear abuses of authority (*City of Peoria v. Cowen* (1927), 326 Ill. 616, 621; *cf. Department of Public Works & Buildings v. Keller* (1975), 61 Ill. 2d 320, 325 (same principle under the Illinois Highway Code)).

Accordingly, the judgment of the appellate court is affirmed, and the cause is remanded to the circuit court of Tazewell County for further proceedings in accordance with the views expressed herein.

*Affirmed and remanded.*